## STANDARD ASBESTOS MFG CO v FULTON

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided May 20, 1935

**264**

Thompson, Hine & Flory, Cleveland, for appellants.

John W. Bricker, Attorney General, Columbus, Charles F. Carr and R. R. Hollington, Cleveland, for appellees.

## OPINION

By LEVINE, J.

The only question before this court is whether or not, under the circumstances, the plaintiffs established their right to priority and preference. It is contended in behalf of the superintendent of banks that the relationship of debtor and creditor existed between the plaintiffs and defendants.

Reliance is had upon §710-165 GC, as follows:

"No property or securities received or held by any trust company in trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company, or shall be liable for its debts or obligations. Money pending distribution or investment may be treated as a deposit in the trust department or may be deposited in any other department of the bank subject in other respects to the provisions of law relating to deposit of trust funds by trustees and others."

Reference is had to the case of McDonald v Fulton, 125 Oh St 507, which construed the above section as follows:

"The provisions of §710-165 GC, authorize a bank organized under the laws of this state, with powers of a trust company, to make a general deposit of money received by it as trustee and held temporarily pending investment or distribution, in the commercial or other department of such bank, unless otherwise expressly provided by the trust agreement creating and controlling such trust."

"As to such funds, the relation of the bank and the trustee is as debtor and creditor and funds thus deposited may be used by the bank in its general business as other assets."

"The rights of the trustee with reference to the funds so deposited are no greater than, or different from, those of other general depositors and upon liquidation of the bank they all share proportionately in the distribution of the assets."

Reference is also had to the case of Fulton v Gardiner, 127 Oh St 77; Fulton v

**Univ. of Dayton et, 1 OO 408, 129 Oh St 90.**

It is therefore urged that a relationship of debtor and creditor was thereby established between the trustee and the bank and that there can be no preferential recovery against the assets of the insolvent institution.

Usually the relationship of debtor and creditor is contractual in its character and such relationship does not arise as against the express or implied intention of the parties. The various cases cited by counsel, while recognizing the right of the trustee bank to deposit trust funds in any other department, hold distinctly that when the trust instrument provides otherwise or the surrounding circumstances show an intention to the contrary, that the statute does not apply. Much discussion is expanded as to the meaning of the term "escrow" which was the term adopted by the parties to denote this particular transaction. Both sides refer to **16 O. Juris., §11,** as follows:

"The depositary of an escrow is said to be the agent of both parties for the purpose of making delivery upon the performance of the conditions; strictly speaking, however, the depositary is not an agent at all, but rather the trustee of an express trust, with duties to perform for each of the parties, the performance of which neither can forbid without the consent of the other. **The depository may not perform any acts with reference to handling the deposit or its disposal which are not authorized by the contract of deposit.** Thus, a depositary holding a deed conveying land and a sum of money to pay therefor, the transaction to be consummated at a definite fixed time which is made the essence of the contract, may not in the absence of express authority from the vendee, surrender to the vendor any part of the money held, to enable him to remove encumbrances and perfect his title." **(Glick v Galier, 116 Oh St 41).**

Originally, the term was applied to a "deed, bond or other written instrument delivered to a third person to be delivered by him to a grantee only upon the performance or happening of certain conditions upon which the transmission of title is complete but no title passes until the fulfillment of the conditions." It would, therefore, appear that strictly speaking, the term "escrow" does not apply to a deposit of money. We are here to determine the relationship which arose between the parties when the letter of escrow instruction was forwarded to the Guardian Trust Company, trustee, by The Cleveland Terminals Building Company and the Lundorff-Bicknell Company and which was followed by the action of the bank in transferring $30,500.00 from the "construction account" to the "escrow account."

While technically speaking, the term "escrow" as used in this transaction, may be termed a misuse, yet there is no denying that the arrangements made between the parties partake of the essential elements of a technical escrow.

When a deed is delivered to a third person to be held by him until the performance of a condition or the happening of a certain event and then to be delivered over to the grantee, the depositary acquired no title whatsoever in the instrument so delivered to him. His duty is clear, namely, to obey to the letter the instructions given him. This fund of $30,500.00 which was taken by The Guardian Trust Company out of the "construction account" and credited to the "escrow account" became an escrow fund, in pursuance of a settlement between E. B. Kaiser Company and the Lundorff-Bicknell Company and which was followed by a letter of instruction to the Guardian Trust Company. While the money was being held by the Guardian Trust Company in the "construction account" it bore interest. When the same was transferred to the "escrow account" it ceased to bear interest. What was the duty of the Guardian Trust Company with reference to this money which was transferred by it from the "construction account" to the "escrow account?"

The designation of the account as an "escrow account" lends emphatic support to the contention that it was the intention of the parties that this fund shall be treated as a special fund and to be distributed only in accordance with definite instructions. The bank then became a medium to accomplish the performance of the agreement of settlement had between the parties.

By the transfer of the money to the "escrow account" the Guardian Trust Company entered into an undertaking that it will hold this fund intact subject to instructions only. When a deed is delivered to a third party called an escrow agent, to be delivered only upon the happening of certain events, no discretion is lodged in the escrow agent except to obey the instructions given him concerning it. When this money was deposited in the "escrow account" under definite instructions the Guardian Trust Company became obligated to do nothing

with this money which would be' violative of such instructions.

Sec 710-165 GC, which authorizes the trustee bank to deposit trust funds in any other department of the bank, has reference only to cases where no instructions concerning the deposit of the fund were given to the trustee bank. When the instrument of trust provides otherwise or where the intention of the parties is clearly to the contrary, such authority must be denied.

The above section is, of course, in derogation of the general law of trusts which commands the trustee not to intermingle trust funds with his own. The section being in derogation of the general law, must be strictly construed. It is doubtful whether the legislature can force upon two contracting parties a relationship of debtor and creditor when it was clearly their intention that such relationship shall not arise.

It was accordingly held in the case of Bank of American National Trust & Savings Association v California Savings & C. Bank (1933 Cal.) 22 Pac. 2nd 704, that "where the purchase price of land or where the property or money with which to discharge a mortgage. is delivered to a bank in escrow * * * the deposit is held to be a deposit for a special purpose and the bank has no right to use the amount thereof in its general business."

Since the statute above referred to is in derogation of the general law. it must be given a restricted meaning and will not operate against the clear and manifest intention of the parties. While it is true that The Guardian Trust Co., as such, at no time parted with possession of the money in its hands, but merely caused a change in bookkeeping yet it must be remembered that the bank is contending that there are two separate entities in the same banking institution, consisting of the trust department and the commercial and savings department. It became clearly the duty of the bank trustee upon the receipt of its letter of instructions either to keep the fund segregated or to at all times reserve the equivalent in cash which is required to cover the deposit under specific instructions. Equity regards that as done which ought to be done. In this case, by the operation of the doctrine, the fund deposited in the escrow department became charged with a special obligation, namely, that the same shall be applied only in accordance with the letter of instructions.

The Supreme Court of Ohio, in the case of **Fulton, Supt. of Banks, etc. v Paper Co et, 129 Oh St, 104**, quotes with approval from 5 Ohio Juris, 509, as follows:

"Under earlier holdings, the mingling of trust funds, with money of the trustee, was held to defeat the owner's title and compel him to stand as a mere unsecured creditor, upon the theory that money was not earmarked and therefore could not be recovered in specie. But this view seems no longer to obtain in Ohio. It is not, the courts say, the identical dollars that may be pursued, any more than it is the identical grains of wheat put in a warehouse or elevator that the depositor may follow but the equivalent in dollars; the rule now is that, where a bank mingles trust money with its own funds for its own purposes, will be presumed to have been paid from its own money and not from the trust fund, in a situation where the mingled fund has not been reduced at any time below the amount of the trust fund; this presumption rests upon the idea that the amounts drawn out from time to time were of moneys which the bank had a right to expend in its own business, and that the balance which remained included the trust fund, which the bank had no right to use, and the use of which would have been a violation of its trust, which will not be presumed in the absence of evidence to that effect."

The intention of the parties is quite clear that this amount which by specific instructions was to be taken out of the "construction account" and deposited in the "escrow account" shall be subject to the fulfillment of the specific instructions only.

Considerable discussion is had as to the exact terminology to apply to the Guardian Trust Co., in the matter of this escrow account. Counsel for the superintendent of banks apply the term "trustee of an express trust." Counsel for plaintiffs apply the term "agent or stockholder." In our opinion, this difference of terminology is not material. Every agent occupies a fiduciary relationship as does a trustee. but there are different kinds of trusts. Conceding the terminology by counsel for the superintendent of banks to be correct, and if the Guardian Trust Co. is to be called the "trustee of an express trust" it does not alter the result. If the Guardian Trust Co., is to be regarded with reference to this escrow account as the "trustee of an express trust" there must be added to it that it is the "trustee of a special express trust."

We conclude that the circumstances surrounding this transaction show clearly that the parties did not intend that the ordinary trust relationship shall arise but instead intended that the fund shall not be used except in strict obedience to the instructions contained in the letter of instructions to the Guardian Trust Co.

We are also of the opinion that §710-165, GC, which enables the bank trustee to deposit trust funds in any other department of the bank, must be given a limited meaning, as the same is in derogation of the general law which prohibits the trustee from commingling trust funds with its own, and that the section is only applicable where the instrument of trust does not otherwise provide or where the circumstances surrounding the transaction do not show an intention of the parties to the contrary.

In view of the above considerations, a decree will be entered, granting the relief prayed for. A decree will be entered accordingly.

TERRELL, J, concurs in judgment.
LIEGHLEY, PJ, dissents.

## DISSENTING OPINION

By LIEGHLEY, PJ.

I am unable to agree with the majority in these cases. Because I do not and for the further reason that I have been compelled to dissent in quite a number of these bank cases during the last year, I am impelled to briefly state in writing my reasons therefor. Many of these cases vary in their facts but the same principles control.

It has seemed to me in the hearing of preference cases that very often counsel consider the issues as matters in controversy with the bank. The trend of their argument takes the form of an attack upon the bank or a charge of neglect or misconduct on the part of its officers. They seem to ignore and forget that whenever the superintendent takes charge of an insolvent bank, the bank as such is nonexistent for purposes of liquidation. The primary and outstanding task then becomes one of balancing equities between creditors. A preference case is a contest between one creditor and all other creditors. It is not a contest with the bank as such. The right of one creditor to be paid in full and thereby preferred to the prejudice and exclusion of other creditors presents the issue.

The calamity that befell the many banks and banking institutions in this state, resulting from a financial depression for the most part, caused much distress and financial loss to depositors and stockholders and precipitated a volume of litigation. This litigation has resulted in many reported decisions of the Supreme Court and the Appellate Courts of Ohio. The consideration and decision of preference cases require resort to decisions of other states in rare instances. The decisions of the Supreme Court are clear-cut and easily reconcilable. Likewise, the decisions of the intermediate courts with few exceptions.

My study of the Supreme Court decisions to date has led me to the positive conclusion that as soon as the superintendent takes charge the creditors and their interests through the superintendent become paramount.

These decisions have established as law that the superintendent takes charge and liquidates the bank with strict regard to the condition in which he finds it at the moment he takes control and as the books and records then disclose its conditions to be, except for errors and omissions.

Further, all persons having money on deposit, whether in savings or commercial account, are general claimants. If the money is on deposit at the moment he takes charge, the deposit remains the property of the depositor regardless of his commitments. It is immaterial that the depositor has checks outstanding, or that an unpresented certified check was theretofore issued, or that an unpresented draft had been purchased, or that the deposit is committed in an uncompleted real estate deal escrowed with the bank, or that money was deposited in escrow to be distributed upon the happening of certain future events or conditions if at the time distribution had not been made. The superintendent is a liquidator for the benefit of creditors of the assets of the bank as disclosed by the books and records as of the moment he assumes charge. He does not as liquidator honor or recognize prior uncompleted or unconsummated commitments of depositors. It is not his duty to close real estate deals and kindred uncompleted trustee deals. This rule does equity to the many. A contrary rule would favor the few and work injustice to the many.

Coming to the case at bar, The Guardian Trust Company was trustee of the "trustee construction account" for payment of estimates on the erection of The Higbee Building. The Lundoff-Bicknell Company was general contractor for the owner, The Cleveland Terminals Building Company. Late in 1932 the general contractor and a sub-

268

contractor, E. B. Kaiser Company differed as to the amount due but finally agreed upon $30,500 to be deposited with The Guardian and distributed when and as prescribed conditions were complied with.

A letter signed by the owner and general contractor dated December 8. 1932 was delivered to The Guardian depositing the above sum "to be disbursed to or upon the order of E. S. Kaiser, a partnership, under the conditions herein set forth." Upon the performance of nine different acts by Kaiser, $14,000 shall be paid to him. The balance shall be held in escrow and disbursed as and when Kaiser shall deposit waivers of lien and release of eight enumerated subcontractors of Kaiser among which number these two plaintiffs were included. These conditions and prerequisites to distribution were not performed nor complied with prior to the date the liquidator took the bank over for liquidation and no distribution was therefore made.

Upon receipt of this letter the Guardian transferred said amount from the construction account by check to an escrow account and then deposited same in the bank. This letter contains no reference to segregation nor to comminglying of assets. No additional assets came into the bank. It was a bookkeeping transaction to show an escrow ledger account with the funds in the commercial branch in the bank. The trust department was fully· authorized by §710-165, GC, as then in force, to make this deposit pending distribution. The relation established was debtor and creditor. McDonald v Fulton, 125 Oh St, 507.

So that when the superintendent took over the bank for liquidation there was in the trust department a record of this deposit and in the commercial department the funds to be paid to Kaiser if, as and when he complied with conditions. He doubtless found many other deposits of similar character that were not demand deposits the owners of which he considered general creditors of the bank as he was warranted in doing by virtue of the statute.

Under these facts the plaintiffs claim they are entitled to a preference. They deny that the bank was a trustee and say it was only a custodian or a stakeholder and never acquired title. With these contentions I cannot agree.

The weight of authority sustains the view that an escrow agent, or by whatever name you may denominate the bank, is a trustee of an  express trust. Call his relation to and with each party in caring for their respective interests one of agency or of a custodian or a stakeholder, if either title is preferred, nevertheless the escrow fund was a trust fund pending distribution. The transaction determines and not the name given to the one entrusted with the funds.

This conditional deposit in the escrow department to the credit of E. B. Kaiser was made December 8, 1932. The bank closed months later. He could withdraw it when he furnished proof that he had paid his sub-contractors. He did not do so. The money was there on deposit when the bank closed. No sound reason why this account should be preferred to the prejudice of other creditors has been adduced. Especially, when preference is denied to other depositors ˙ with commitments outstanding, probably likewise issued to pay their debts, of one kind or another above enumerated.

As I understand the holdings, all depositors are general creditors unless the books and records of the bank or proof produced at the trial show that the bank and the depositor had a contract expressly implied that the deposit would be segregated and not commingled with the funds of the bank. Busher, Clerk v Fulton, Supt., 126 Oh St, 485. This letter making the deposit is silent in these respects. No such contract or thought of such a contract can be implied from any language in the letter, and in the absence thereof the escrow arrangement is deemed to have been made with knowledge of the then existing and empowering statute. §710-165, GC. This clerk (Busher) deposited public funds and was denied a preference. Likewise as to public funds deposited by a sheriff. An administrator who deposited money of the estate he was administering, was denied a preference. There are many more considerations of equity to the contrary in such cases than presented in the case at bar.

Counsel seemed to get some comfort from the language of the second paragraph of the syllabus of the case of Fulton v Paper Company. 129 Oh St, 90, 1 OO 408 probably on the theory that the Supreme Court has modified the rule of the Busher case, supra. The court did not declare a modification. The language "2. In determining whether title to funds deposited has passed to the depositary bank, regard must be had to the agreement under which the deposit is made, and to all the conditions and circumstances of the arrangement," is clearly reconcilable with and referable to the kind of contract express or implied specifically defined in the Busher case. The law remains that unless a special deposit is

established, the depositor is a general creditor.

Something especially sacred and exceptional seems to be claimed for escrows that lacks convincing force. Because a depositor has his account entangled in an executory escrow agreement at the time the bank closes before distribution thereof presents no persuasive reason why it should be given a preferential status. The money was on hand when the bank closed in the same position as the moneys of other depositors with analagous commitments outstanding. All these unfortunate creditors should be treated alike sharing equally and proportionately losses and benefits.

The foregoing expresses briefly the law of Ohio as I understand it from the reported decisions and expresses the basis upon which I dissent in these cases, as I did in other cases that I believed controlled by these considerations.